EDWARD G. BROWN v. AI FITCH.

1. An agreement in form, in the singular number, signed in the name of a firm, is joint, and not joint and several, or several.
2. Where a contract is entire, complete performance is a condition precedent to the payment of the price, unless the parties, by mutual consent, have agreed to sever the contract, or the defendant has repudiated it, or the plaintiff is justified by some fault of the defendant, in abandoning it.
3. While the joint contract remains in force, performance by one of the joint contractors will be presumed to be a performance of the contract, and not the making of a new and different contract in favor of the party performing : and if the act done is fairly referable to the contract, the undisclosed intentions of the party that it shall not be a performance of the joint contract, cannot be made available against the other to bind him, without his consent, on the footing of a new and distinct agreement.
4. When an action is brought in the name of one of several joint contractors, and no notice of the non-joinder of the others, as plaintiff, is given, under the ninth section of the practice act of 1855, the defendant cannot, at the trial, question the right of the plaintiff to sue alone, but he may insist that the contract was joint, and make any defence under it that he could have made if all the contractors had been joined as plaintiffs. The design of this section was to abolish all formal objections, and not to deprive defendants of their substantial rights.

---

Error to Supreme Court.

This was an action of *assumpsit*, brought by the defendant in error against the plaintiff in error, to recover the value of a bill of timber alleged to have been sold to the defendant below. Brown was the contractor for building a bridge for the Central Railroad Company of New Jersey, over Newark

bay. Fitch and one Boynton were partners, as timber dealers, and on the 21st of January, 1863, entered into a written agreement with Brown, of which the following is a copy :

" Bill of pine timber for E. G. Brown. 47,520 feet long, $15 \times 15$ lengths, $37\frac{1}{2}$ fl , 50, $62\frac{1}{2}$, 75, and $87\frac{1}{2}$.

422 caps, 34 feet long, $14 \times 14$.

Timber to be straight, and as good as you usually get for me, and about 15,000 feet, $12 \times 12$.

I agree to deliver the above timber in April, May and June, 1863, at eighteen cents per foot, at Elizabethport, N. J.

Jersey City, 21st January, 1863.

FITCH & BOYNTON."

A quantity of timber, of the kind specified in the bill, was delivered by Fitch at Jersey City, between the 15th of June and 22d of October, 1863, but not the quantity contracted for in the bill. Brown accepted the timber, and used it in the construction of the bridge.

The action was brought in the name of Fitch alone, to recover for the timber delivered. The declaration contained only the common counts for goods sold and delivered. The plea was the general issue. No notice of the non-joinder of Boynton was given, as required by the ninth section of the practice act of 1855. The cause was tried at Hudson Circuit, and resulted in a verdict for the plaintiff for the sum of $4410.64.

For plaintiff in error, *R. Gilchrist* and *J. P. Bradley*.

For defendant in error, *J. F. Randolph* and *B. Williamson*.

The opinion of the court was delivered by

DEPUE, J. The controversy at the trial was whether the timber, for the recovery of the value of which this suit was brought, was delivered under the agreement made with Fitch & Boynton, or to the credit of the plaintiff individually.

It was suggested, rather than argued, that the defendant, having neglected to give notice of the non-joinder of Boyn-

ton as a co-plaintiff, as required by the ninth section of the practice act of 1855, (*Nix. Dig.* 665) could not set up the agreement made with Fitch & Boynton, or make any defence under it. That agreement is, as to them, joint, and not several, or joint and several. Where two persons sign their individual names to a note, or instrument in form, in the singular number, the obligation is joint and several. *Marsh* v. *Ward, Peake* 130; *Hemmingway* v. *Stone,* 7 *Mass.* 58; *Story on Notes,* § 58; 1 *Pars. Con.* 11, *n. a.* But the rule is different when the signature is that of a firm. In that case the obligation is joint and not several. *Doty* v. *Bates,* 11 *J. R.* 544; *Ex parte Buckley in re Clark,* 14 *M. & W.* 469; *Parsons on Part.* 213, 214, *n. p.; Hall* v. *Smith,* 1 *B. & C.* 474; holding otherwise, is expressly overruled, in *Ex parte Buckley,* cited above.

In an action brought upon that agreement, Boynton should have been joined as a plaintiff. Before the passage of the act of 1855, the defendant could have availed himself of the objection of his non-joinder, by motion to nonsuit or upon the plea of the general issue. 1 *Chitty's Pl.* 13. By the ninth section of the act of 1855, the non-joinder or misjoinder of a plaintiff shall not be objected to by the defendant, unless he give written notice of such objection to the plaintiff within five days after filing his plea or demurrer, and state in such notice the name of the person alleged to have been omitted or improperly joined; and thereupon the court or a judge, at any time before the trial of the issue, may order that any person not joined as a plaintiff, shall be so joined; or that any person originally joined as a plaintiff shall be struck from such cause, if it shall appear that injustice will not be done by such amendment, and that the person to be added, either in person or by writing under his hand, consent to be so joined, or that the person to be struck out was originally made a party without his consent, or that such person consent in manner aforesaid to be struck out, and upon making and filing such order and written consent, the previous proceedings in the cause on the part of the

plaintiff shall be amended in conformity thereto, and the defendant shall plead to the amended declaration in thirty days after the service of a copy thereof on him.

This section differs materially from the English common law procedure act, (15th and 16th Vic., ch. 76,) by the thirty-fourth, thirty-fifth, and thirty-sixth sections of which the misjoinder or non-joinder of a plaintiff may be amended at any time before the trial, by order of the court or a judge, or if notice of the non joinder has been given, the plaintiff may amend without order; and if he does not so amend where notice has been given, the amendment cannot be made at the trial; but if no notice of non joinder be given, the non-joinder may be amended at the trial. *Holland's Common Law Procedure* 21.

The provisions in our act for the defendant's pleading to the amended declaration in thirty days after service of a copy, indicates clearly that it was not intended that any amendment should be made in this respect, at the trial under the forty-third, forty-fourth, and forty-sixth sections of the act.

No notice of the non-joinder of Boynton having been given, the defendant was precluded from making that objection at the trial, but that preclusion extended no further than to prevent his defeating the action, solely on the ground that Boynton was not joined as a plaintiff. He could not, at the trial, question the right of the plaintiff to sue alone, but he was at liberty to insist that the timber was delivered under the contract made by the plaintiff and Boynton, and make any defence under that contract which he might have made if Boyton had been a party to the suit. The design of the section in question was to abolish mere formal objections, and not to deprive defendants of their substantial rights.

It was competent, therefore, for the defendant to set up in his defence that the timber was delivered under the agreement of the 21st of January, and insist that, by its terms, or because of its not being completely performed, he was not

liable to pay for what had been delivered under it, and the judge correctly charged the jury that that contract was entire, and that no recovery could be had, if the jury were satisfied that the timber had been delivered under that agreement, because it was not completely performed. Where a contract is entire, the complete performance is a condition precedent to the payment of the price, and no recovery can be had for a partial performance, unless the parties, by mutual consent, have agreed to sever the contract, or the defendant has himself repudiated it, or the plaintiff is justified by some fault of the defendant in abandoning it. *Erwin* v. *Ingram*, 4 *Zab.* 519, 523; *Haslack* v. *Mayer*, 2 *Dutcher* 284, 291; *School Trustees* v. *Bennett*, 3 *Dutcher* 513.

It became, therefore, the material question in the cause, whether the timber was delivered under the agreement with Fitch & Boynton, or under a contract, express or implied, with Fitch alone. The judge so charged the jury. But it is insisted that the judge erred in his instructions to the jury, touching the principles of law by which they were to be guided in determining this question. The charge was, in substance, that in determining the question whether the timber was delivered on the joint contract, it was necessary, before the jury so found, that they should be satisfied that both parties intended at the time of the delivery that it should be delivered upon the contract; that the intention of the defendant to get it upon the contract was not sufficient, but that Fitch, the plaintiff, must have intended that it should go upon the contract; if Fitch intended not to fulfill the contract, and intended not to deliver any timber upon the contract, although he might be liable to an action for damages, yet, as against such intention of Fitch, the intention of the defendant to get the timber upon the contract, if he could, is not sufficient. To this part of the charge the defendant excepted, unless the court would charge what would be the law if each party did not know the other's intention, which the court declined to do.

Under the peculiar circumstances of this case, these in-

structions were erroneous. The agreement of the 21st of January was for the delivery at Elizabethport, during the months of April, May, and June, of certain timber of an unusual description, which the defendant required for the construction of a bridge over Newark bay.

To that agreement Fitch was a party, and bound for its performance, in connection with Boynton. That agreement the defendant might have repudiated or waived, and it was competent for both parties to rescind it by mutual consent. There was no evidence of an express repudiation or waiver by the defendant, or of a rescission by mutual consent. The timber delivered was the property of Fitch, and was delivered by him at Jersey City, between the 15th of June and the 22d of October; and although it is claimed that it did not exactly correspond with the timber embraced in the contract, yet it answered the same general description in its adaptedness to the same purpose, and was accepted by the defendant under the contract, and was by him used in the construction of the bridge.

No express agreement by the defendant to purchase the timber of the plaintiff individually, or to accept it on his individual account, is shown; nor does it appear that the plaintiff gave the defendant notice of his individual ownership of the timber, and that the delivery was not under the contract, but on his individual account. If the plaintiff at the time of delivery, had expressly notified the defendant that the timber was his individual property, and required its acceptance by the defendant on individual account, and the defendant had accepted it, it would have constituted an individual transaction. But while the joint contract remained in force, performance by one of the joint contractors will be presumed to be a performance of the contract, and not the making of a new and different contract, in favor of the party performing; and if the act done is fairly referable to the contract, the undisclosed intentions of the party cannot be made available against the other, to bind him, without his consent, on the footing of a new and distinct agreement, be-

cause such a transaction would be without one of the essentials of a valid contract—the mutual assent of the parties.

The material questions were, whether the joint contract was still in force, and the timber in question so answered the description of the timber embraced in the contract, in its adaptedness to the same purpose, as to be fairly referable to the performance of that contract, and was so accepted by the defendant, or whether the defendant expressly or impliedly consented to accept it as the individual property of the plaintiff, upon the basis of a new and distinct contract with him individually.

The charge of the court in this respect was erroneous, and for this reason the judgment must be reversed.

*For reversal*—The CHIEF JUSTICE, ELMER, VREDEN-BURGH, DALRIMPLE, WOODHULL, DEPUE, OGDEN, WALES, KENNEDY, VAIL.    10.

*For affirmance*—None.